**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ADAM WEITSMAN and UPSTATE**
**SHREDDING, LLC,**

                                        **Plaintiffs,**

            **vs.**                                        **3:17-CV-00727**
                                                           **(MAD/DEP)**

**ROBERT ARTHUR LEVESQUE, III,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**KELLY, WARNER PLLC**                   **DANIEL R. WARNER, ESQ.**
8283 N. Hayden Road, #229               **RAEESABBAS MOHAMED, ESQ.**
Scottsdale, Arizona 85258
Attorneys for Plaintiffs

**LEVENE, GOULDIN LAW FIRM**            **PATRICIA M. CURTIN, ESQ.**
**- BINGHAMTON OFFICE**
P.O. Box F-1706
Binghamton, New York 13902-0106
Attorneys for Plaintiff

**ROBERT ARTHUR LEVESQUE, III**
1845 Olive Street
Ramona, California 92065
Defendant _pro se_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

       Plaintiffs commenced this action on July 5, 2017, seeking damages and a permanent

injunction stemming from several state-law claims, including the following: (1) defamation and

defamation _per se_; (2) business disparagement and trade libel; (3) tortious interference with

existing and prospective business relationships; and (4) intentional infliction of emotional

distress.  *See* Dkt. No. 1.  After being granted a motion for alternative service and serving

Defendant via email, Plaintiffs filed a motion for default judgment which is now before the Court.

## II.  BACKGROUND

According to the complaint, Defendant, Robert Arthur Levesque III, has uploaded

hundreds of posts on YouTube, Twitter, and Facebook making various accusations about Plaintiff

Adam Weitsman, including that Plaintiff is an accomplice in the high profile disappearance of

Michele Harris that took place in 2001, and that he is an international drug manufacturer and

dealer.  *See* Dkt. No. 1.  Most of the accusations revolve around Defendant's conspiracy theories

involving Plaintiffs' alleged role in the disposal of Michele Harris's body.  *See id.*  According to

the screen shots of Defendant's social media accounts submitted by Plaintiffs, Defendant has less

than two dozen followers on Twitter, and virtually none of his hundreds of posts have been liked,

commented on, or shared.  *See id.*

Defendant failed to answer the complaint even though he was on notice of the suit against

him, as evidenced by his calls to this court, emails to opposing counsel, and various references to

the lawsuit on his social media accounts.  *See* Dkt. No. 28-1 at 3.  On January 2, 2018, despite

having failed to file an answer, Defendant filed a response to Plaintiffs' Motion for Default

Judgment.

## III.  DISCUSSION

### A.    Default Judgment Standard

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court

must follow before it may enter a default judgment against a defendant.'"  *United States v.*

*Simmons*, No. 5:10-CV-1272, 2008 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson*

*v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'"  *Id.* (quotation omitted); *see also* Fed. R. Civ. P. 55(a).  "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'"  *Id.* (quotation omitted).  "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'"  *Id.* (quotation omitted); *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability."  *Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted).  "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought."  *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "The burden is on the plaintiff to establish its entitlement to recovery."  *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158).  "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'"  *Id.* at 190 (citation omitted).

3

When seeking a default judgment, the Local Rules require the party to submit an affidavit attesting to the following:

> 1. The party against whom it seeks judgment is not an infant or an incompetent person;
>
> 2. The party against whom it seeks judgment is not in the military service, or if unable to set forth this fact, the affidavit shall state that the party against whom the moving party seeks judgment by default is in the military service or that the party seeking a default judgment is not able to determine whether or not the party against whom it seeks judgment by default is in the military service;
>
> 3. The party has defaulted in appearance in the action; [and]
>
> 4. Service was properly effected under Fed. R. Civ. P. 4[.]

N.D.N.Y. L.R. 55.2(a).

In the present matter, the Court finds that Plaintiffs have complied with the procedural requirements necessary for the Court to grant their motion for default judgment. Specifically, Plaintiffs have affirmed that Defendant is not an infant or incompetent person and that he is not in military service. *See* Dkt. No. 9. Moreover, Defendant has defaulted in this action, and was served with alternative notice after repeated attempts to personally serve Defendant with the summons and complaint failed due to his evasive actions. *See* Dkt. No. 10; *see also* Dkt. No. 9 at 2. Finally, although Defendant filed a response to the motion for default judgment, it failed to show cause why the Court should not grant default judgment. *See* Dkt. No. 27.

"When the party against whom the default or default judgment is entered is a *pro se* litigant, an additional consideration is at play, namely, a concern about the ability of *pro se* litigants to protect their rights." *Roberts v. Keith*, No. 04 Civ. 10079, 2007 WL 2712853, *2 (S.D.N.Y. Sept. 18, 2007) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Courts accordingly consider the Rule 55(c) "good cause" standard and its three

4

factors—willfulness on the part of the defaulting party, prejudice to the adversary, and the presentation of a meritorious defense—in determining whether default judgement against a *pro se* plaintiff is equitable.  *See, e.g.*, *Niepoth v. Montgomery Cty. Dist. Attorney's Office*, 177 F.R.D. 111, 112 (N.D.N.Y. 1998) (citations omitted).

In the context of default, willfulness on the part of the defaulting party "refer[s] to conduct that is more than merely negligent or careless."  *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  For example, the Second Circuit has found there to be willfulness after the defendants had "purposely evaded service for months before alternative service was authorized."  *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 244 (2d Cir. 1994).  Both Plaintiffs' and Defendant's submissions demonstrate that Defendant not only knew of the ongoing action against him, but ridiculed Plaintiffs' legal efforts online while deliberately evading service by fleeing in his car when approached by process servers.  *See* Dkt. No. 1-4 at 3; Dkt. No. 9 at 2; Dkt. No. 28-1 at 3.  This Court authorized alternative service shortly thereafter.  *See* Dkt. No. 10.  Considering Defendant's conduct, this factor clearly weighs in favor of entering default.

As to the second factor, prejudice to the plaintiff "means the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion – circumstances that make it more difficult for plaintiff to prosecute its case."  *Roberts*, 2007 WL 2712853 at *5 (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).  Other than the delay in obtaining relief that would result from vacating the default judgment, Plaintiffs would not suffer any prejudice. Further, a "delay alone is not a sufficient basis for establishing prejudice."  *Davis*, 713 F.2d at 916 (citations omitted).  However, the absence of prejudice is not dispositive in this context, as "willful default and the absence of meritorious defenses [are] sufficient to support the district court's disposition of the case."  *Rafidain Bank*, 15 F.3d at 244 (citations omitted).

And finally, as to the third factor, the Second Circuit has held that whether a meritorious defense is presented is "measured not by whether there is a likelihood that it will carry the day," but whether that defense would "if proven at trial constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. The only communication this Court has received from Defendant is an unstructured reply in opposition to Plaintiffs' Motion for Default Judgment. Defendant does, however, refer to Plaintiff Weitsman as a "public figure." Under New York defamation law, a plaintiff who is a public figure must satisfy a more stringent standard to support a defamation claim. As discussed below, however, even assuming that Plaintiff Weitsman is a public figure, he has still alleged a plausible defamation claim against Defendant and, even if proven at trial, Plaintiff Weitsman's status as a public figure would not constitute a complete defense at trial.

Since Plaintiffs have met the requirements to secure a default judgment, the Court must now determine whether Plaintiffs' complaint plausibly alleges the four asserted claims.

## B.    Defamation and Defamation *Per Se*

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citations omitted). Further, if the plaintiff is a public figure, to succeed on a defamation claim the plaintiff must prove actual malice, that is "with knowledge that the statement was 'false or with reckless disregard of whether it was false or not.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (quotation omitted). "This includes when a defendant acts 'with a high degree of awareness of [the statement's] probable falsity or [if the defendant] entertained serious doubts as to the truth of his publication.'" *Id.* (quotation omitted).

6

According to the Supreme Court, "[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). Rather, the court must look "to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* For a plaintiff to be classified as a limited purpose public figure, a defendant must show that the plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984).

In the present matter, the complaint plausibly alleges that Defendant repeatedly made false statements about both Plaintiffs, that were published through Defendant's various social media accounts, that the publication of these statements amounted to at least negligent conduct, and that the alleged false statement constitute defamation *per se*. Generally, a defamation plaintiff must plead special damages unless the defamation falls into any one of four *per se* categories: "(1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; (3) statements that impute to the plaintiff a 'loathsome disease'; and (4) statements that impute unchastity to a woman." *Nolan v. State*, 158 A.D.3d 186, 195 (1st Dep't 2018) (citations omitted). Here, Defendant has repeatedly alleged that, among other things, Plaintiff Weitsman used his business, Upstate Shredding, to dispose of the body of Michele Harris and that Plaintiffs are involved with the sale of illegal drugs. Such allegations clearly constitute "statements charging the plaintiff with a serious crime."

Additionally, the complaint plausibly alleges special damages in that Plaintiffs have alleged that Defendant's conduct has caused loss in revenues, business goodwill, and future business prospects.  Such economic damages constitute special damages.  *See Sharratt v. Hickey*, 20 A.D.3d 734, 735 (3d Dep't 2005) (holding that special damages constitute an "economic or financial loss") (citations omitted).

Moreover, even assuming that Plaintiff Weitsman is a public figure, the complaint makes clear that Defendant's conduct satisfies the malice standard in that Defendant's statements were made with reckless disregard of whether they were false or not.  *See Dongguk Univ.*, 734 F.3d at 123 (quotation omitted).  The complaint alleges that Defendant began making the defamatory statements only after his employment at Upstate Shredding was terminated and that the statements have been made solely to cause Plaintiffs harm.

Based on the foregoing, the Court finds that Plaintiffs are entitled to default judgment as to their defamation claims.

## C.    Business Disparagement/Trade Libel

"Under New York law, '[t]rade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property.'"  *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (quoting *Angio–Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989)).  "Like defamation, trade libel is based on an injurious falsehood published to a third party."  *Id.* (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 (1981)).  "However, whereas defamation (in the commercial context) entails a statement that 'impugns the basic integrity or creditworthiness of a business,' trade libel is based on statements 'confined to denigrating the quality of a business' services [or products].'"

8

*Id.* (quotation omitted).  To state a claim for trade libel, a plaintiff must adequately plead "'(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) [ ] special damages.'"  *Id.* (quotation omitted).

In the present matter, the Court finds that Plaintiffs are not entitled to default judgment as to their second cause of action for business disparagement/trade libel.  First, Plaintiffs have failed to allege that Defendant made any statements denigrating the quality of the business' services or products.  Second, denying the motion as to this claim is also appropriate because the claim is duplicative of Plaintiffs' defamation claims insofar as the facts underlying this claim are duplicative of the facts supporting the defamation claim.  *See Enigma Software*, 194 F. Supp. 3d at 291 (citations omitted); *see also Hengjun Chao v. Mount Sinai Hosp.*, 476 Fed. Appx. 892, 895 (2d Cir. 2012) (holding that the "district court correctly dismissed [plaintiff's] other tort claims as duplicative of his defamation claim" where "the factual allegations underlying [those] . . . claims [were] virtually identical to the facts underlying his defamation claim" and "the harms that [plaintiff] contend[ed] he suffered as a result of the[ ] other torts . . . all flow[ed] from the effect on his reputation caused by defendants' allegedly defamatory statements").

Based on the foregoing, Plaintiffs' motion for default judgment as to the second cause of action is denied.  Additionally, since this claim is duplicative of Plaintiffs' defamation claim, the Court orders that it is *sua sponte* dismissed.

## D.    Tortious Interference

"To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the

relationship." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) (citation omitted).  "The defendant's interference must be direct: the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Kolchinsky v. Moody's Corp.*, No. 10 Civ. 6840, 2012 WL 639162, *6 (S.D.N.Y. Feb. 28, 2012) (quoting *B & M Linen, Corp. v. Kannegeisser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010)).  "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort.  Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

In the present matter, the Court finds that Plaintiffs failed to allege which, if any, of its business relationships were harmed by Defendant's behavior.  As such, they are not entitled to default judgment as to this claim. *See Kolchinsky*, 2012 WL 639162 at *6 (holding that a complaint must include a "'sufficiently particular allegation of interference with a specific contract or business relationship'" and finding that the plaintiff's general allegations that the defendant maligned his reputation among potential employers in the industry was insufficient to support a claim for tortious interference with business relationships) (quotation and other citations omitted).  Additionally, the motion must be denied as to this claim because it is duplicative of Plaintiffs' defamation claim. *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726 (S.D.N.Y. 2014) (dismissing tortious interference claim as duplicative of defamation claim where all alleged injuries arose out of the allegedly defamatory statements); *see also Hengjun Chao*, 476 Fed. Appx. at 895.

Based on the foregoing, the Court denies Plaintiffs' motion for default judgment as to the tortious interference cause of action. Additionally, since this claim is duplicative of Plaintiffs' defamation claim, the Court orders that it is *sua sponte* dismissed.

**E.    Intentional Infliction of Emotional Distress ("IIED")**

"'The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress.'" *Brunache v. MV Transp., Inc.*, 151 A.D.3d 1011, 1014 (2d Dep't 2017) (quotation and other citations omitted).

In the present matter, the Court finds that Plaintiffs are not entitled to default judgment on their intentional infliction of emotional distress claim because it is duplicative of the defamation claim. Indeed, it is the same course of conduct and injury that form the basis for both claims. *See Franco v. Diaz*, 51 F. Supp. 3d 235, 243-44 (E.D.N.Y. 2014) (dismissing the defendants' IIED counterclaim because "precisely the same conduct and the same injury fall within the ambit of defendants' proposed defamation counterclaim"); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011) (dismissing the plaintiff's IIED claim as duplicative of his defamation claim) (citations omitted); *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 7 (3rd Dep't 1989) (holding that "a cause of action for intentional infliction of emotional distress should not be entertained 'where the conduct complained of falls well within the ambit of other traditional tort liability' . . . conduct complained of in plaintiff's third cause of action falls entirely within the scope of his more traditional tort claim for defamation") (citing *Fischer v. Maloney*, 43 N.Y.2d 553, 558 (1978)); *Herlihy v. Metropolitan Museum of Art*, 214 A.D.2d 250, 262 (1st Dep't 1995) (holding that "the plaintiff's cause of action for intentional infliction of emotional distress must also fail because it falls within the ambit of other traditional tort liability which, in this case, is

reflected in plaintiff's causes of action sounding in defamation"); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005) (holding that the cause of action alleging intentional infliction of emotional distress should have been dismissed as duplicative of the causes of action alleging malicious prosecution and assault and battery).

Based on the foregoing, the Court denies Plaintiffs' motion for default judgment as to the claim for IIED and dismisses that claim as duplicative.

## F.    Damages

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citations omitted). As relevant, Rule 55(b)(2) provides that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Nevertheless, the amount of damages to award in connection with a default judgment may be decided by the court without a hearing. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustock v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (holding that "'it [is] not necessary for the District Court to hold a hearing, as long as it ensured there was a basis for the damages specified in the default judgment'")) (other citations omitted). The court may find a basis for damages by "rely[ing] on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." *Fustok*, 873 F.2d at 40.

In the present matter, in support of their request for damages, Plaintiffs submitted the affidavit of Plaintiff Adam Weitsman. *See* Dkt. No. 25-6. According to Plaintiff Weitsman, as a

result of Defendant's conduct, Plaintiffs have been harmed in the following ways: "(1) USS has spent thousands of dollars on public relations to address and/or resolve the False Statement; (2) I and representatives of USS have been contacted by news media asking whether the False Statements are true, drawing unwanted attention to Defendant Levesque's False Statements; (3) I receive numerous phone calls and text messages a day from personal friends asking if any of the False Statements are true, whether I was involved with a murder and/or drugs, and whether I was doing ok; (4) metal and recycling business insiders have come to know of the False Statements and have contacted me and repesentative[s] [of] USS to inquire about the False Statements; (5) certain metal and recycling business contacts have refrained from and/or decreased their business with USS; (6) I have become less social, and even deactivated my Facebook account page, which had nearly 15,000 friends/followers; (7) my wife has been in distress and fears for her safety; [and] (8) I have and will continue to suffer public humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, muscle pain, lack of sleep, lack of a desire to eat, emotional pain and suffering, anguish, and loss of self-esteem." *Id.* at ¶ 7. Plaintiff Weitsman asserts that he is "seeking an award for lost profits in the amount of $200,000.00 (representing the net profits that USS would have received but for the Defendant's defamation), in addition to general damages for loss of reputation" in the amount of an additional $200,000.00. *See id.*

Further, Plaintiff Weitsman contends that he has paid his public relations manager, Stephen Donnelly, "no less than $36,000 to assist with positive media coverage and internet search optimization." *Id.* at ¶ 8. Additionally, he "estimate[s] that approximately no less than $180,000 to $200,000 in scrap sales have been lost because of the False Statements." *Id.*

The Court finds that the evidence submitted is insufficient to support an award of damages without an evidentiary hearing. Aside from the specific money spent on the public relations

13

manager, the requested amounts are unsupported by anything other than Plaintiff Weitsman's

speculation.  As such, the Court denies without prejudice Plaintiffs' motion insofar as it seeks

damages.  An evidentiary hearing will be scheduled so that Plaintiffs can present evidence in

support of their application.

**G.**    **Preliminary and Permanent Injunction**

> According to well-established principles of equity, a plaintiff
> seeking a permanent injunction must satisfy a four-factor test before
> a court may grant such relief.  A plaintiff must demonstrate: (1) that
> it has suffered an irreparable injury; (2) that remedies available at
> law, such as monetary damages, are inadequate to compensate for
> that injury; (3) that, considering the balance of hardships between
> the plaintiff and defendant, a remedy in equity is warranted; and (4)
> that the public interest would not be disserved by a permanent
> injunction.

*eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (citations omitted).

"Constitutional concerns and long tradition make courts often wary of enjoining

defamation."  *Ferri v. Berkowitz*, 561 Fed. Appx. 64, 65 (2d Cir. 2014) (citations omitted).

"Although courts are wary of enjoining speech, unprotected speech, like defamation, may be

enjoined in extraordinary circumstances."  *Id.* at 65 n.2 (citation omitted).

In *Ferri*, the Second Circuit affirmed the district court's denial of permanent injunctive

relief, noting that "[t]he proposed injunction barred not only defamatory statements, but any

'negative statements or comments' by Appellee about Appellants or Berkowitz's family, business

associates, or lawyers."  *Ferri*, 561 Fed. Appx. at 65.  The district court properly concluded that

such language was over-broad and vague.  *See id.*

In the present matter, the Court finds that Plaintiffs have established that they are entitled

to permanent injunctive relief.  Defendant's constant barrage of defamatory statements have and

will continue to cause irreparable harm.  The remedies available at law will be inadequate to

compensate Plaintiffs. The balance of hardships clearly favors Plaintiffs in that the only hardship Defendant will suffer is that he will no longer be permitted to publish his defamatory remarks. Further, the public interest will not be disserved by issuing a permanent injunction.

Moreover, although the Court acknowledges the general wariness courts have in enjoining speech, such an injunction is appropriate in the present matter. The speech at issue is clearly defamatory and, therefore, unprotected. Additionally, the proposed language for the injunction is narrowly tailored to cover only the defamatory remarks at issue and, unlike *Ferri*, does not include non-defamatory negative statements or opinions about Plaintiffs.

Finally, the Court finds that injunctive relief is particularly appropriate in the present matter because of Defendant's conduct. Throughout this litigation, Defendant has repeatedly made reference to the proceedings before this Court and made multiple attempts to evade service. Despite his notice of the pending litigation, Defendant continued making defamatory statements, prompting Plaintiffs' counsel to make several applications before the Court for interim relief. Defendant's conduct has demonstrated that, without injunctive relief, his tortious conduct will undoubtedly continue.

Based on the foregoing, the Court grants Plaintiffs' request for permanent injunctive relief.[1]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

---

[1] The terms of the injunction are set forth below.

15

**ORDERS** that Plaintiffs' motion for default judgment against Defendant (Dkt. No. 25) is **GRANTED IN PART** as to liability for the defamation claim, pending a hearing on damages; and the Court further

**ORDERS** that Plaintiffs' business disparagement/trade libel, tortious interference, and intentional infliction of emotional distress claims are **DISMISSED**; and the Court further

**ORDERS** that Defendant Robert Arthur Levesque, III is hereby restrained and enjoined from publishing on the internet, or causing the publication of, any of the following false and defamatory statements, whether directly or indirectly, about Plaintiffs Adam Weitsman and/or Upstate Shredding: (1) that Plaintiffs Weitsman or Upstate Shredding is a "murderer;" (2) that Plaintiffs Weitsman or Upstate Shredding conspired to murder Michele Harris; (3) that Plaintiffs Weitsman or Upstate Shredding assisted, helped, and/or aided Calvin Harris or any other person in disposing of Michele Harris' body; (4) that Plaintiffs Weitsman or Upstate Shredding conspired, assisted, helped, and/or aided in the murder of Michele Harris; (5) that Plaintiffs Weitsman or Upstate Shredding was paid money by Calvin Harris or any other person in connection with the murder or disappearance of Michele Harris; (6) that Plaintiffs Weitsman or Upstate Shredding conspired, assisted, helped, and/or aided Calvin Harris or any other person from being found guilty, convicted, arrested, detained, liable, responsible, and/or suspected of murdering Michele Harris; (7) that Plaintiff Upstate Shredding or any of its equipment was used to dispose of Michele Harris' body; (8) that Plaintiffs Weitsman or Upstate Shredding was involved in the disappearance of Michele Harris; (9) that Plaintiffs Weitsman or Upstate Shredding sold or sells illegal drugs; (10) that Plaintiffs Weitsman or Upstate Shredding is or has been involved with Joaquin "El Chapo" Guzman; (11) that Plaintiffs Weitsman or Upstate Shredding engaged or engages in money laundering; (12) that Plaintiffs Weitsman or Upstate

Shredding bribes or has bribed one or more government officials; (13) that Plaintiffs Weitsman or

Upstate Shredding is or has been involved with covering up the death of Michael Burke; and (14)

that Plaintiffs Weitsman or Upstate Shredding fooled the Environmental Protection Agency

("EPA") by removing two feet of contaminated soil at the Jamestown Yard; and the Court further

**ORDERS** that, within **FOURTEEN (14) DAYS** from the date of this Memorandum-

Decision and Order, Defendant shall remove from all websites, forums, blogs, lists, social media

accounts, and any other forum of mass communication (collectively "Forums") all defamatory

statement pertaining to Plaintiffs Weitsman or Upstate Shredding; and the Court further

**ORDERS** that the Clerk shall schedule a damages inquest at the earliest convenience of

the parties; and the Court further

**ORDERS** that Plaintiffs' motion to strike (Dkt. No. 29) is **DENIED as moot**; and the

Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 25, 2018
      Albany, New York

Mae A. D'Agostino
U.S. District Judge